1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH C. PARKER, | NO.  C11-6026-TSZ-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Kenneth C. Parker appeals the final decision of the Commissioner of the

Social Security Administration ("Commissioner") which denied his applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

the Commissioner's decision be reversed and remanded.

## I.      FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, Plaintiff was a 43-year-old man with a high

school education.  Administrative Record ("AR") at 40.  His past work experience includes

employment as a maintenance mechanic, carpenter, laborer, and logger.  AR at 217.  Plaintiff

was last gainfully employed in November 2008.  *Id*.

REPORT AND RECOMMENDATION - 1

1    On February 10, 2009, Plaintiff protectively filed a claim for SSI payments and a DIB

2    application, alleging an onset date of November 30, 2008.  AR at 169-182.  Plaintiff asserted

3    that he is disabled due to degenerative disc disease, back pain, right shoulder pain, and

4    depression.  AR at 196, 240.

5        The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 78-

6    85, 88-92.  Plaintiff requested a hearing, which took place via video teleconferencing on March

7    4, 2010.  AR at 33-77.  On March 25, 2010, the ALJ issued a decision finding Plaintiff not

8    disabled and denied benefits based on his finding that Plaintiff could perform a specific job

9    existing in significant numbers in the national economy.  AR at 19-28.  After receiving

10   additional evidence, the Appeals Council denied Plaintiff's request for review, AR at 1-7,

11   making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42

12   U.S.C. § 405(g).  On December 16, 2011, Plaintiff timely filed the present action challenging

13   the Commissioner's decision.  Dkt. 1, 5.

14                        II.      JURISDICTION

15       Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

16   405(g) and 1383(c)(3).

17                        III.     STANDARD OF REVIEW

18       Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

19   Social Security benefits when the ALJ's findings are based on legal error or not supported by

20   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

21   Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

22   such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

23   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

24   (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

REPORT AND RECOMMENDATION - 2

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Mr. Parker bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work

experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On March 25, 2010, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2.    The claimant has not engaged in substantial gainful activity since November 30, 2008, the alleged onset date.

3.    The claimant has the following severe impairments: degenerative disc disease, lower back pain, disc bulges, stenosis, and right shoulder pain.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.    The claimant has the RFC to perform sedentary work (lift 10 pounds occasionally, lift an carry small objects, stand and walk 2 hours, and sit for 6 hours in an 8-hour workday) except he is limited to occasional balancing, stooping, kneeling, crouching, and crawling.  The claimant can never climb ladders, ropes, and scaffolds.  He requires a sit and stand option in an 8-hour workday.  The claimant can be around occasional vibrations.  He can frequently, but not continuously, reach with his right arm.

6.    The claimant is unable to perform any past relevant work.

7.    The claimant was born on XXXXX, 1966 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

---

[2]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from November 30, 2008, through the date of the decision.

AR at 21-27.

## VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.      Whether the ALJ properly evaluated the medical evidence;

2.      Whether the ALJ erred in discounting Plaintiff's credibility;

3.      Whether the ALJ erred in assessing Plaintiff's residual functional capacity;

4.      Whether the ALJ erred at step five; and

5.      Whether the new evidence that was submitted to the Appeals Council was properly rejected as irrelevant.

Dkt. No. 14 at 2.

## VII.     DISCUSSION

A.      The ALJ Did Not Err in Evaluating the Medical Evidence Available on the Date of the Decision.

Plaintiff contends that the ALJ overlooked various medical opinions when crafting the RFC and therefore not all of his limitations were properly accounted for.  The Commissioner argues that Plaintiff has not shown that the ALJ failed to include any particular limitation, and that any error in the ALJ's analysis was harmless.

REPORT AND RECOMMENDATION - 6

1.      Legal Standards.

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons.  *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

2.      Dr. Thomas's Opinions.

The ALJ summarized the April 2009 opinions of examining physician Eric Thomas, D.O., as follows:

> The claimant had a physical evaluation in April 2009.  The claimant described having two back surgeries in 1996 and 1997.  He reported his response to the surgeries was good.  The physical examination revealed the claimant had decreased range of motion and tenderness at the cervical, thoracic, and L5 level.
>
> . . .
>
> The examiner, Eric Thomas, D.O., opined the claimant's cervical, thoracic, and L5 strain caused significant interference with his ability to perform one or more basic work-related activities.  Dr. Thomas stated the claimant had restricted mobility, agility, and flexibility in his ability to balance, bend, climb, crouch, handle, kneel, pull, push, sit, and stoop.  Additionally, Dr. Thomas opined the claimant was limited to perform work at the sedentary level.

AR at 22 (internal citations to AR at 322-326 omitted).  Dr. Thomas reevaluated Plaintiff in October 2009, and the ALJ summarized the medical opinions related to the second examination:

REPORT AND RECOMMENDATION - 7

1

2

> In October 2009, Dr. Thomas reexamined the claimant.  Consistent with his earlier assessment, Dr. Thomas opined the claimant was limited to sedentary work due to his moderate restrictions that stem from his cervical, thoracic, and L-5 strain. . . .

3

AR at 23 (internal citation to AR at 415 omitted).

4

5

Plaintiff contends that the ALJ overlooked that Dr. Thomas found him restricted in his

6

ability sit, but this contention is not supported by the record.  The ALJ specifically mentioned

7

that Dr. Thomas found Plaintiff limited in his ability to, *inter alia*, sit.  AR at 22.  Dr. Thomas

8

did not identify any specific functional limitations associated with Plaintiff's sitting restriction

9

(AR at 324, 415), and found Plaintiff able to perform sedentary work in both evaluations.  AR

10

at 324, 415.  Because Plaintiff has not identified any limitation not already listed in the RFC

11

that he contends should have been included, Plaintiff has failed to identify an error with respect

12

to Dr. Thomas's opinions.  *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 692

13

n.2 (9th Cir. 2009) ("We reject any invitation to find that the ALJ failed to account for

14

Valentine's injuries in some unspecified way.").

15

    3.    Dr. Novak's Opinions.

16

The ALJ described the May 2009 opinions of examiner Erik Novak, M.D., Ph.D., as

17

follows:

18

> In May 2009, the claimant underwent a consultative physical examination, that showed the claimant was well built, was able to ambulate in and out of the exam room, had a slight antalgic gait, but he did not use an assistive device for ambulation.  The consultative examiner, Erik Novak, M.D., PhD, diagnosed the claimant with lumbrosacral back pain, status post decompression and discectomy at L4-5, and biceps tendinosis and some mild impingement at the right shoulder.  Dr. Novak opined the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently and he should avoid frequent stooping, kneeling, crouching, and crawling.  Dr. Novak noted he did not review the claimant's most recent MRI findings.

19

20

21

22

> . . .

23

24

REPORT AND RECOMMENDATION - 8

1   . . . The undersigned finds this opinion is not consistent with the medical record
2       as a whole.  Therefore, minimal weight is afforded to this opinion.

3   AR at 22, 25.  Plaintiff contends that the ALJ erred by overlooking Dr. Novak's opinion that

4   while sitting, he needs to adjust his position frequently.  Dkt 14 at 5 (citing AR at 348).

5           The Commissioner argues that the ALJ accounted for this opinion in providing for a

6   "sit and stand option" in the RFC assessment.  *See* AR at 24.  A sit/stand option allows a

7   person to alternate periods of sitting and standing.  *See* Social Security Ruling ("SSR") 83-12,

8   1983 WL 31253, at *4 (1983).  Plaintiff does not explain why the sit/stand option provided by

9   the ALJ would not accommodate his need to adjust his position and stretch, and therefore has

10  failed to identify error with regard to the ALJ's evaluation of Dr. Novak's opinions.

11          4.      Dr. Messerli's Opinions.

12          The ALJ described the opinions of examining physician Brandon Messerli, D.O., as

13  follows:

14      The medical record indicated the claimant sought care for his low back pain in
        October 2009.  The examining physician, Brandon James Messerli, D.O.,
15      confirmed the claimant's diagnosis of chronic low back and neck pain with
        some radicular symptoms, and chronic pain syndrome.  Dr. Messerli opined that
16      although there were degenerative changes on the claimant's MRI, there was no
        specific etiology for his pain or that would correlate with his radicular
17      symptoms.  Dr. Messerli recommended conservative treatment such as treating
        the claimant in a comprehensive pain clinic and other conservative therapies.

18  AR at 23.  Plaintiff contends the ALJ erred by failing to note Dr. Messerli's findings "which

19  are consistent with [Plaintiff's] complaints of pain," and failing to note that Dr. Messerli did

20  not question the legitimacy of Plaintiff's complaints of pain.  Dkt. 14 at 9.

21          Plaintiff fails to show, however, that the ALJ's decision is inconsistent with Dr.

22  Messerli's opinions.  The ALJ found that Plaintiff's lower back pain and right shoulder pain

23  were severe impairments, and his findings specifically addressed Plaintiff's pain testimony.

24

1    AR at 21-26.  Accordingly, the ALJ did not err in assessing Dr. Messerli's opinions.  *See*

2    *Valentine*, 574 F.3d at 692 n.2.

3           5.      Ms. Quirong's Opinions.

4           Plaintiff visited physical therapist Christine Quirong, P.T., to address his back pain.

5    Ms. Quirong completed an evaluation and progress notes, as well as therapy notes, explaining

6    Plaintiff's participation in physical therapy.  AR at 465-186.  The ALJ mentioned Plaintiff's

7    physical therapy notes, but did not specify Ms. Quirong by name.  AR at 23, 25.  The ALJ

8    noted that Plaintiff's symptoms improved with physical therapy, but Plaintiff contends that the

9    ALJ erred by failing to mention how poorly Plaintiff was faring when Ms. Quirong first began

10   treating him.  Dkt. 14 at 11.

11           As with other arguments rejected above, Plaintiff fails to identify any particular

12   limitations identified by Ms. Quirong that the ALJ omitted from the RFC assessment.

13   Accordingly, the ALJ did not err with respect to Ms. Quirong's opinions.  *See Valentine*, 574

14   F.3d at 692 n.2.

15          6.      Dr. Green's Opinions.

16          Plaintiff alleges two errors related to the ALJ's handling of the opinions of his primary

17   care physician, Thomas Green, M.D.  First, Plaintiff contends that the ALJ erred by failed to

18   note that Dr. Green prescribed Trazodone to treat his depression.  Dkt. 14 at 9.  But the ALJ

19   did list Trazodone among Plaintiff's medications.  AR at 23.  Plaintiff has failed to identify an

20   error related to this prescription.

21          Plaintiff next contends that the ALJ erred by failing to mention that Dr. Green

22   prescribed a cane for his use in December 2009.  *See* AR at 462.  Plaintiff fails to identify any

23   error that flows from this omission, however.  As the Commissioner points out, the record does

24   not contain any explanation of the degree of Plaintiff need for or use of a cane, or any

REPORT AND RECOMMENDATION - 10

description of the circumstances for which it is needed.  *See* SSR 96-9p, 1996 WL 374185, at

*7 (1996) (explaining how to determine whether a hand-held assistive device is medically

required, for purposes of assessing RFC).  The record also contains indications — which were

mentioned by the ALJ — that Plaintiff does not require the use of a cane at all times and that

his ability to ambulate on his own improved with physical therapy, which began the month

after Dr. Green prescribed the cane.  AR at 25 (citing AR at 473, 475).  Plaintiff has failed to

show that any additional limitations stemming from Dr. Green's cane prescription were

overlooked by the ALJ, and thus the Plaintiff has failed to allege error with respect to Dr.

Green's cane prescription.  *See Valentine*, 574 F.3d at 692 n.2.

B.    The ALJ Did Not Err in Discounting Plaintiff's Credibility, in Light of the Record
      Available on the Date of the Decision.

      The ALJ provided a number of reasons for discounting the credibility of Plaintiff's pain

testimony.  Specifically, the ALJ specified that Plaintiff's improvement with physical therapy,

conservative treatment, and daily activities undermine his testimony regarding the intensity,

persistence, and limiting effects of his symptoms.  AR at 25.

      Plaintiff's argument regarding credibility is somewhat scattered.  Plaintiff reiterates in

this section arguments regarding the ALJ's handling of medical evidence, which were

addressed and resolved in previous section, *supra* Part VII.A.  To the degree that Plaintiff

includes in this credibility section arguments related to the new evidence presented to the

Appeals Council, that evidence will be discussed *infra*, Part VII.D.

      Turning now to consider the reasons the ALJ provided for discounting Plaintiff's

credibility, Plaintiff first contends that none of the daily activities listed by the ALJ are

inconsistent with his pain testimony.  As to daily activities, the ALJ found:

      The claimant reported in a consultative examination [that] he spent most days
      walking the dog, and when in season he enjoyed fishing.  He reported being

REPORT AND RECOMMENDATION - 11

1
2
3

able to care for his own personal hygiene, meals, and performing household chores.  In addition, the claimant stated he visited with his daughter and granddaughter most days.  The claimant described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.

4   AR at 25 (internal citation to AR at 352 (April 2009 examination report)).   Contrary to

5   Plaintiff's arguments, these activities are inconsistent with Plaintiff's testimony of pain so

6   severe it would prevent all work activity.  *See* AR at 57-66 (Plaintiff's testimony at the

7   administrative hearing regarding the limiting effect of his symptoms).  *See Bray v. Comm'r of*

8   *Social Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (evidence of ability to participate in a

9   variety of activities undermines a claimant's claim of debilitating illness).

10          Furthermore, the ALJ cited Plaintiff's improvement with physical therapy, a

11   conservative treatment, as a reason to discount Plaintiff's credibility.  This is a proper factor to

12   consider in a credibility determination.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th

13   Cir. 2008).  Thus, because the ALJ provided valid reasons to discount Plaintiff's credibility in

14   light of the evidence available to him, the ALJ did not err in exercising his discretion in this

15   regard.

16   C.     The ALJ Did Not Err in Assessing Plaintiff's Residual Functional Capacity or in
        Finding Plaintiff Capable of Performing Other Work at Step Five, Based on the Record
17     Available on the Date of the Decision.

18          Plaintiff reiterates arguments made in other sections of his brief to contend that the ALJ

19   erred by failing to include all of his limitations in his RFC assessment, and that therefore the

20   step-five findings were based on an incomplete hypothetical.  For the reasons explained *supra*,

21   Part VII.A, Plaintiff has not shown either that the ALJ erred in failing to account for various

22   symptoms or that the ALJ's RFC assessment is inconsistent with those symptoms.  And for the

23   reasons explained *supra*, Part VII.B, the Plaintiff has not shown that the ALJ erred in

24

1    discounting his credibility and therefore the ALJ was not required to account for limitations

2    that he properly found to be not credible.

3            One new argument raised in this section involves SSR 96-9p, which explains how the

4    use of a medically needed cane could affect a claimant's ability to perform sedentary work:

> Since most unskilled sedentary work requires only occasional lifting and
> carrying of light objects such as ledgers and files and a maximum lifting
> capacity for only 10 pounds, an individual who uses a medically required hand-
> held assistive device in one hand may still have the ability to perform the
> minimal lifting and carrying requirements of many sedentary unskilled
> occupations with the other hand.  For example, an individual who must use a
> hand-held assistive device to aid in walking or standing because of an
> impairment that affects one lower extremity (e.g., an unstable knee), or to
> reduce pain when walking, who is limited to sedentary work because of the
> impairment affecting the lower extremity, and who has no other functional
> limitations or restrictions may still have the ability to make an adjustment to
> sedentary work that exists in significant numbers.  On the other hand, the
> occupational base for an individual who must use such a device for balance
> because of significant involvement of both lower extremities (e.g., because of a
> neurological impairment) may be significantly eroded.

13   SSR 96-9p, 1996 WL 374185, at * 7.  According to Plaintiff, the ALJ erred by failing to

14   acknowledge that he could not perform the full range of sedentary work, in light of this SSR.

15           Plaintiff overlooks the fact that he has not established that his cane was medically

16   needed for purposes of the Social Security Act, given that Dr. Green's cane prescription does

17   not establish for what purposes the cane was prescribed and what circumstances (such as

18   distance, terrain, and duration requirements) trigger its use.  *See* SSR 96-9p, 1996 WL 374185,

19   at *7.  Dr. Green's one-sentence reference to a cane prescription does not explain whether he

20   prescribed the cane to, for example, aid in walking because of an impairment in one leg, or to

21   reduce walking pain, or to aid in balance due to impairment in both legs.  *See* AR at 462.

22   Because Plaintiff has failed to establish that circumstances exist such that his ability to adjust

23   to sedentary work would be significantly eroded, the ALJ did not err in failing to address this

24   section of SSR 96-9p when entering step-five findings.

REPORT AND RECOMMENDATION - 13

D.     The Appeals Council Erred in Finding Plaintiff's New Evidence to be Irrelevant to the
       ALJ's Decision.

On April 19, 2010, less than one month after the ALJ issued his decision, Dr. Green diagnosed Plaintiff with lumbar spine radiculopathy and opined that Plaintiff was unable to perform even sedentary work.  AR at 502-03.  On June 3, 2010, neurosurgeon Barbara Lazio, M.D., also diagnosed Plaintiff with lumbar spine radiculopathy (AR at 537-538), and she ultimately performed lumbar surgery on Plaintiff on July 12, 2010.  AR at 530-31.

Plaintiff submitted Dr. Green's April 2010 evaluation to the Appeals Council, along with Dr. Lazio's treatment notes and other radiology treatment notes written after the ALJ's written decision was entered.  AR at 487-544.  The Appeals Council received this evidence but found that it did not warrant review of the ALJ's decision:

> The evidence submitted by your attorney in connection with your request for
> review was dated March 30, 2010 through July 28, 2010.  The Administrative
> Law Judge decided your case through March 25, 2010.  This new information is
> about a later time.  Therefore, it does not affect the decision about whether you
> were disabled beginning on or before March 25, 2010.

> If you want us to consider whether you were disabled after March 25, 2010, you
> need to apply again.

AR at 2.  Plaintiff argues that the Appeals Council erred in finding that the new evidence was not relevant to the time period at issue, and that the Appeals Council should have considered the new evidence for purposes of reviewing whether the ALJ's decision was supported by substantial evidence.  The Commissioner does not specifically address Plaintiff's relevance argument, but generally contends that "an opinion obtained after an individual is found not disabled by the ALJ is all the less persuasive."  Dkt. 20 at 17.

The Commissioner's cursory treatment of the issue fails to account for the totality of the new evidence presented to the Appeals Council.  The Commissioner does not explain why Plaintiff's lumbar surgery just a few months after the date of the ALJ's decision does not

REPORT AND RECOMMENDATION - 14

1   provide a relevant perspective on the "success" of Plaintiff's prior conservative treatments.

2   *See, e.g.*, *Lester*, 81 F.3d at 832 ("'[M]edical evaluations made after the expiration of a

3   claimant's insured status are relevant to an evaluation of the preexpiration condition.'" )

4   (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)).  Plaintiff's July 2010 surgery

5   addressed the back-pain symptoms that Plaintiff experienced — and the ALJ credited, to some

6   degree — during the time period addressed by the ALJ's decision, and therefore the medical

7   evidence related to Plaintiff's progress (or lack thereof) with treating his back pain post-

8   decision are undoubtedly relevant to a full and fair evaluation of the severity of Plaintiff's back

9   pain pre-decision.  Thus, the Appeals Council should not have rejected Plaintiff's new

10  evidence on relevance grounds.  *See Taylor v. Comm'r of Social Sec. Admin.*, 659 F.3d 1228,

11  1232 (9th Cir. 2011) (holding that if the Appeals Council incorrectly states that new evidence

12  is irrelevant to the time period at issue, and thus rejects it, the rejection is improper).

13          Because the Appeals Council erroneously rejected Plaintiff's new evidence on

14  relevance grounds, the appropriate remedy is remand to allow the ALJ to reconsider his

15  decision in light of the new evidence.  *See Taylor*, 659 F.3d at 1233 (citing 20 C.F.R. §

16  404.970(b)).  The ALJ shall reconsider his findings under the five-step sequential analysis in

17  light of the new evidence submitted (AR at 487-544).  *See id.*

18  //

19  //

20  //

21  //

22  //

23  //

24  //

REPORT AND RECOMMENDATION - 15

1

VIII.   CONCLUSION

2          For the foregoing reasons, the Court recommends that this case be REVERSED and

3  REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

4  instructions.  A proposed order accompanies this Report and Recommendation.

5          DATED this 19th day of September, 2012.

6

7                                                    *James P. Donohue*
                                          _____
8                                          JAMES P. DONOHUE
                                          United States Magistrate Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 16